# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENYA DARRICK CALDWELL, | Case No. 1:13-cv-00465-SAB |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| CITY OF SELMA, et al., | (ECF Nos. 24-29, 35, 38, 39, 40) |
| Defendants. | |

Plaintiff Kenya Darrick Caldwell, an incompetent person, by Ever Jean Kelley, his conservator, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 28, 2013. Currently before the Court is Defendants' motion for summary judgment filed August 21, 2014.

The Court heard oral arguments on August 28, 2014. Counsel M. Greg Mullanax appeared for Plaintiff and counsel David M. Overstreet and Rachelle Taylor Golden appeared for Defendants. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the August 28, 2014 hearing, as well as the Court's file, the Court issues the following order.[1]

## I.

## BACKGROUND

Plaintiff suffered a traumatic brain injury after he was attacked by his stepfather on January 1, 1999. (First Am. Compl. ¶ 13.) Petitioner's mother, Ms. Kelly, filed for conservatorship in Fresno County Superior Court and was appointed as conservator of Plaintiff's

---

[1] The parties have consented to the jurisdiction of the magistrate judge. (ECF Nos. 15, 16.)

1  person and estate on March 25, 2003.  (Id. at ¶¶ 16, 17.)

2       Plaintiff was arrested on February 10, 2006, and filed the complaint in this action on

3  March 28, 2013.[2]  On August 21, 2103, Plaintiff filed a first amended complaint against

4  Defendants City of Selma ("City"), Chief Thomas H. Whiteside ("Chief Whiteside"), and Steve

5  Burgamy.  Plaintiff brings this action against Defendant Burgamy alleging violations of the right

6  to be free from unreasonable searches and seizures, due process of law, excessive force, equal

7  protection, and freedom from interference with Plaintiff's zone of privacy;[3] against Defendants

8  City and Chief Whiteside alleging they had knowledge of a pattern and practice of these

9  violations and did not act to prevent such violations.

10      Defendants filed a motion for summary judgment on July 25, 2014.  Plaintiff filed an

11  opposition to the motion for summary judgment on August 14, 2014.  Defendants filed a reply on

12  August 19, 2014.

### II.

### SUMMARY JUDGMENT LEGAL STANDARD

15      Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ...

16  if the movant shows that there is no genuine dispute as to any material fact and the movant is

17  entitled to judgment as a matter of law."  Summary judgment must be entered "against a party

18  who fails to make a showing sufficient to establish the existence of an element essential to that

19  party's case..."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] party seeking summary

20  judgment always bears the initial responsibility of informing the district court of the basis for its

21  motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

22  and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

23  absence of a genuine issue of material fact."  Id.

24      If the moving party meets its initial responsibility, the burden then shifts to the opposing

25  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

---

[2] Although Defendants have pled the statute of limitations as an affirmative defense, they have not raised the issue of this lapse in time in their motion for summary judgment.

[3] Defendant Burgamy does not move for summary judgment on the equal protection or due process claims.

1  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

2  existence of this factual dispute, the opposing party may not rely upon the denials of its

3  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

4  admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

5  56(e); Matsushita, 475 U.S. at 586 n.11.

### III.

### UNDISPUTED FACTS

1.      In February 2006, Plaintiff lived in Chowchilla, with his mother.  Plaintiff has a history of mental instability and is prescribed medication to control raging fits.

2.      After the incident, Plaintiff told investigating officers that he ran away from home.  He had been reported as a missing person days before the February 10, 2006, incident.  Plaintiff had not taken his medication during the time he was missing.

3.      At about 7:59 p.m., on February 10, 2006, a citizen called to report a suspicious person reported as a "black gentleman" moving between cars.  The citizen reported that there had been previous burglaries and tires stolen in the area.

4.      At about 8:01 p.m., Defendant Burgamy was dispatched to the 3400 block of Jordan for a "suspicious BMA."

5.      Defendant Burgamy was dressed in police uniform and drove a marked patrol car as he pulled up to the site of the incident.

6.      Plaintiff was compliant and did not appear to be on drugs or intoxicated when Defendant Burgamy initially spoke with him.

7.      After having observed a black male adult, Defendant Burgamy arrived in a marked patrol car on scene at approximately 8:03 p.m.  Defendant Burgamy asked Plaintiff his name to which Plaintiff responded with, "John" "Jake" or "Jacob" "Winston".  Plaintiff stated that his name was "John Brown."  Defendant Burgamy suspected the names were false.

8.      Defendant Burgamy requested and Plaintiff gave permission to search Plaintiff for weapons for their mutual safety.  After requesting and receiving Plaintiff's permission to extract objects from Plaintiff, and laying them on the hood of the patrol car, Defendant Burgamy began

to go through Plaintiff's wallet.[4]

9.     As Defendant Burgamy was going through Plaintiff's items, Plaintiff attacked Defendant Burgamy, striking him and biting his face causing a wound.  Defendant Burgamy felt pressure on his handgun which he perceived as an attempt by Plaintiff to obtain his handgun. During the scuffle, Defendant Burgamy fired one shot striking Plaintiff in the left side of his back.[5]

10.     At 8:10 p.m., Defendant Burgamy radioed that he needed backup.   Almost immediately, Defendant Burgamy radioed that he had discharged his weapon and requested an ambulance.

11.     The event happened quickly and Plaintiff does not recall the specific details of the incident.

12.     Plaintiff attacked Defendant Burgamy by running and swinging at and biting him; intending to knock Defendant Burgamy out and escape.

13.     Plaintiff claimed that Defendant Burgamy struck him twice in the forehead with his hands, and Plaintiff then bit Defendant Burgamy.

14.     Plaintiff admits that he bit Defendant Burgamy, but claims that it was not hard enough to leave a mark.

15.     Plaintiff admitted causing the bite mark on Defendant Burgamy's face.

16.     Plaintiff claims that he was biting Defendant Burgamy when he was shot.

17.     To Defendant Burgamy, Plaintiff appeared aggressive with his hands positioned

---

[4] Plaintiff objected to the original fact as mischaracterizing Defendant Burgamy's testimony.  The undisputed evidence establishes that Defendant Burgamy placed Plaintiff's belongings on the hood of his patrol car and had Plaintiff sit on the front bumper of his patrol vehicle.  (Depo. of Steve Burgamy 18:18-21, ECF No. 28-2.) Defendant Burgamy then moved to the passenger side of his patrol car and began looking through the paperwork in Plaintiff's wallet.  (Id. at 19:8-19, 21:18-24; Interview Transcript 10-11, ECF No. 35-9.)

[5] See Fresno County Sheriff's Department Technical Services Report 060003531, ECF No. 35-8 at 50.

According to Defendant Burgamy, he pushed Plaintiff away, called for backup and ordered Plaintiff to stay back.  Plaintiff began to charge toward Defendant Burgamy as if preparing to tackle him.  At that time, Defendant Burgamy pulled and fired his gun striking Plaintiff.  (ECF No. 35-8 at 11.)

According to Plaintiff, Defendant Burgamy fired his weapon while Plaintiff was biting him in the face. (Depo. of Kenya Darrick Caldwell 118:7-19.)

1  as if about to make a tackle just before he charged Defendant Burgamy.  Plaintiff does not have a

2  recollection of the details of charging or running at Defendant Burgamy.

3      18.    Just before pulling the trigger, Defendant Burgamy felt that Plaintiff was seriously

4  trying to hurt, or was trying to kill him.[6]

5      19.    Defendant Burgamy believed that Plaintiff had previously tried to get his

6  handgun, and if Plaintiff was successful, he would shoot Defendant Burgamy.

7      20.    One round from a .40 caliber duty weapon was fired by Defendant Burgamy, and

8  only one matching bullet casing was found at the scene.

9      21.    After firing the shot, Defendant Burgamy notified dispatch of having done so, and

10  requested ambulance.

11      22.    Shortly after the gun was fired both Selma Police and Fresno County Sheriff

12  officials arrived, investigating the incident.

13      23.    The bullet which was just under the surface of Plaintiff's skin was removed under

14  local anesthesia as an outpatient procedure.

15      24.    Lisa Gamoian, Chief Deputy District Attorney, Homicide Unit, of The Office of

16  the District Attorney for Fresno County, found that there were grounds for self-defense under the

17  circumstances.

18      25.    Plaintiff was arrested for violation of Penal Code sections for causing injury to

19  Defendant Burgamy.

20      26.    Peace Officer Standards and Training (P.O.S.T.) is recognized as the authority

21  that governs the training of police officers in California.  These professional standards are similar

22  to other states across the nation.[7]

---

[6] Plaintiff disputes whether Defendant Burgamy actually felt threatened by Plaintiff.

[7] Plaintiff objects on the grounds of lack of foundation and hearsay.  Myron Dyck is a Lieutenant in the Selma Police Department who is the custodian of record for police policies and procedures, investigations relating to officer involved shootings, internal affairs investigations, and officer training.  As such he would have personal knowledge of the facts included in this declaration regarding P.O.S.T. certification and the training provided by Selma Police Department. Lt. Dyck's statements in his declaration are statements made within this proceeding and are not hearsay.  Fed. R. Evid. 801(c).

    Plaintiff also objects to the report of expert Joe Callanan on the same grounds.  Mr. Callanan has included his Professional Resume and declaration which establish that has law enforcement experience and has been qualified

1       27.    The Selma Police Department is a fully certified law enforcement agency

2 consistent with the minimum standards set forth by P.O.S.T. Officers with the Selma Police

3 Department are required to attend a P.O.S.T. certified academy.  They receive ongoing training

4 through field training programs, on-the-job training, advanced officer courses, and various

5 classes and seminars offered throughout the State of California.  The Selma Police Department

6 has had a training unit that ensures Selma police officers receive training in compliance with

7 P.O.S.T.  The training provided by the Selma Police Department with regard to use of force and

8 use of deadly force is in compliance with P.O.S.T. standards.

9       28.    Prior to February 10, 2006, Defendant Burgamy had attended a P.O.S.T. certified

10 police academy and received P.O.S.T. certification.

11       29.    Consistent with its policy regarding the use of force, the Selma Police Department

12 trains its officers that they can use reasonable force to defend themselves or others, affect an

13 arrest or detention, prevent escape and/or overcome resistance.  Officers are trained to assess the

14 situation and use the amount of force that is reasonable under the circumstances.

15       30.    The training regarding the use of deadly force provided to Selma Police

16 Department officers is P.O.S.T. compliant.

17       31.    Defendant Burgamy was trained in the appropriate use of force.

18       32.    Selma Police Department's policies governing use of deadly force are consistent

19 with other law enforcement agencies within the State of California.

20       33.    P.O.S.T. does not exclude the use of deadly force when an officer reasonably

21 believes that such force is necessary to protect him or others from an immediate threat of death

22 or serious bodily injury.

23       34.    Plaintiff inflicted serious bodily injury on Defendant Burgamy.

24       35.    At no time has the Selma Police Department had a policy, practice, or custom of

25 improperly supervising its police officers.

26       36.    Administrative staff of the Selma Police Department review and examine

27

28 as an expert witness in the United States and abroad regarding police matters.  He is qualified to testify as an expert in this matter.  Plaintiff's objections on the grounds of foundation and hearsay are overruled.

incidents in which force is used in order to determine whether the force used was reasonable in light of the circumstances facing the officers; and take appropriate action when necessary. Furthermore, it has been the policy and practice of the Selma Police Department to conduct thorough investigations into allegations of misconduct on the part of its police officers.

37.    In 2006 it was the policy of the Selma Police Department, when available, to have the Fresno County Sheriff's Department investigate officer involved shootings.

38.    The City of Selma Police Department requested and the Fresno County Sheriff's Department investigated the shooting involved in this case.

**VI.**

**DISCUSSION**

**A.    Fourth Amendment**

Plaintiff alleges that Defendant Burgamy violated his Fourth Amendment rights by conducting an illegal search and seizure and using excessive force.  "The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.' " Terry v. Ohio, 392 U.S. 1, 8 (1968).  The Constitution does not forbid all searches and seizures, but unreasonable searches and seizures. Terry, 392 U.S. at 9.

1.    Search and Seizure

While it is unclear from the First Amended Complaint whether Plaintiff is challenging the initial contact by Defendant Burgamy, the motion for summary judgment contends that the initial stop and search for weapons did not violate the Fourth Amendment.  (ECF No. 25 at 9.) Plaintiff does not address the initial stop or the subsequent search in the opposition to the motion for summary judgment, nor was this issue addressed at the August 27 hearing.

In determining the constitutionality of a seizure, the court considers the level of suspicion required by law enforcement and the manner in which the seizure occurred.  U.S. v. Guzman-Padilla, 573 F.3d 865, 876-77 (9th Cir. 2009).  In considering the manner in which the seizure occurred, the Court looks at the totality of the circumstances and "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of

1   the governmental interests alleged to justify the intrusion" to determine the reasonableness of the

2   seizure. <u>Scott v. Harris</u>, 550 U.S. 372, 383 (2007) (quoting <u>United States v. Place</u>, 462 U.S. 696,

3   703 (1983)); <u>Guzman-Padilla</u>, 573 F.3d at 876-77.

4        A police officer may make a brief investigatory stop for the purpose of investigating

5   possible criminal behavior when he has reasonable suspicion that criminal activity may be afoot.

6   <u>U.S. v. Montero-Camargo</u>, 208 F.3d 1122, 1129 (9th Cir. 2000).   The officer "must be able to

7   articulate more than an 'inchoate and unparticularized suspicion' or 'hunch' of criminal

8   activity." <u>Montero-Camargo</u>, 208 F.3d at 1129 (quoting <u>Illinois v. Wardlow</u>, 528 U.S. 119, ___,

9   120 S.Ct. 673, 676 (2000)).   "[R]easonable suspicion exists when an officer is aware of specific,

10  articulable facts which, when considered with objective and reasonable inferences, form a basis

11  for particularized suspicion." <u>Montero-Camargo</u>, 208 F.3d at 1129.   This requires an assessment

12  based on the totality of the circumstances and the circumstances must arouse reasonable

13  suspicion that the particular individual being stopped has committed or is about to commit a

14  crime. <u>Id.</u>   Applying these principals to the facts of this case the Court finds that Defendant

15  Burgamy did not violate the Fourth Amendment by initially contacting Plaintiff and searching

16  him.

17       Defendant Burgamy was responding to a call that there was a "suspicious black male" in

18  the area who was hanging around parked vehicles.   The caller indicated that there had been

19  burglaries and tires stolen in the area.   (U.F. 3.)   Dispatch informed Defendant Burgamy that a

20  black male, wearing a large overcoat was walking westbound on Nelson Boulevard toward

21  Highland.   (ECF No. 35-8 at 8; ECF No. 35-5 at 1.)   Defendant Burgamy arrived in the area

22  within five minutes of receiving the call and observed Plaintiff, who matched the description of

23  the suspect, walking southbound on Highland just south of Nelson Boulevard.   (U.F. 7; ECF No

24  35-8 at 8.)

25       Defendant Burgamy contacted Plaintiff to investigate if he was the suspicious individual

26  who was reported to have been in the area.   The facts available to Defendant Burgamy allowed

27  him to reasonably believe that Plaintiff was the subject of the dispatch call.   Defendant Burgamy

28  found Plaintiff close to the area that the individual was reported to have been heading within five

minutes of receiving the call; and Plaintiff matched the description provided by the reporting party.

There was no show of force involved in the initial contact with Plaintiff. Defendant Burgamy was alone in his patrol vehicle. Defendant Burgamy stopped his vehicle behind Plaintiff and asked Plaintiff if he could talk to him. (ECF No. 35-8 at 9.) Defendant Burgamy did not draw his weapon or order Plaintiff to come to the vehicle. Plaintiff responded to the request by walking over to Defendant Burgamy. Law enforcement officers do not implicate the Fourth Amendment by merely approaching an individual on the street and inquiring if he is willing to answer some questions. U.S. v. Washington, 490 F.3d 765, 770 (9th Cir. 2007); U.S. v. Kim, 25 F.3d 1426, 1430 (9th Cir. 1994).

Defendant Burgamy suspected that Plaintiff had provided a false name. (U.F. 7.) Defendant Burgamy asked Plaintiff if he could search him. (U.F. 8.) It is permissible for an officer to request consent to search as long as the officer does not convey the message that the individual is required to consent. Washington, 490 F.3d at 770. Further, the parties do not dispute that Plaintiff consented to the search.

Defendant Burgamy searched Plaintiff and extracted several items from his pockets and laid them on the hood of his patrol car. (U.F. 8.) Defendant Burgamy then moved to the passenger side of the vehicle to look at the paperwork in Plaintiff's wallet, at which time Plaintiff attacked him. (U.F. 8, 9.) The entire incident, from the time that Defendant Burgamy initially contacted Plaintiff to the shot being fired lasted approximately seven minutes. (ECF No. 35-5 at 1.) Based upon the totality of the circumstances giving rise to the consent, this was a consensual search that did not violate the Fourth Amendment. Kim, 23 F.3d at 1432.

Considering the totality of the circumstances, the Court finds that Defendant Burgamy's initial stop and search of Plaintiff was not an unreasonable search and seizure that would violate the Fourth Amendment.

2.   Zone of Privacy

Plaintiff alleges that Defendant Burgamy violated his "right to be free from interference with his zone of privacy as protected by the Fourth and Ninth Amendments to the United States

1  Constitution." (ECF No. 8 at ¶ 34(e).)  Defendant Burgamy contends that Plaintiff has provided
2  no information that his privacy was invaded.  (ECF No. 25 at 9.)

3     "While the Supreme Court has expressed uncertainty regarding the precise bounds of the
4  constitutional "zone of privacy," its existence is firmly established."  In re Crawford, 194 F.3d
5  954, 958 (9th Cir. 1999).  At least two distinct kinds of privacy interests have been identified as
6  being protected by the United States Constitution: the individual interest in avoiding disclosure
7  of personal matters, and the interest in independence in making certain kinds of important
8  decisions.  Id.  Plaintiff does not submit any evidence to create a triable issue of fact that his
9  privacy has been violated by any acts alleged in the complaint.

10     **B.     Qualified Immunity**

11     Defendant Burgamy contends that he is entitled to qualified immunity because his use of
12  force was reasonable.  The doctrine of qualified immunity protects government officials from
13  civil liability where "their conduct does not violate clearly established statutory or constitutional
14  rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231
15  (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity protects
16  "all but the plainly incompetent or those who knowingly violate the law."  Ashcroft v. al-Kidd,
17  __ U.S. __, 131 S. Ct. 2074, 2085 (2011) (citations omitted).

18     To determine if an official is entitled to qualified immunity the court uses a two part
19  inquiry.  Saucier v. Katz, 533 U.S. 194, 200 (2001) overruled in part by Pearson, 555 U.S. 223.
20  The court determines if the facts as alleged state a violation of a constitutional right and if the
21  right is clearly established so that a reasonable official would have known that his conduct was
22  unlawful.  al-Kidd, 131 S. Ct. at 2083.  This does not require that the same factual situation must
23  have been decided, but that existing precedent would establish the statutory or constitutional
24  question beyond debate.  Id.  "The linchpin of qualified immunity is the reasonableness of the
25  official's conduct."  Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).  A
26  district court is "permitted to exercise their sound discretion in deciding which of the two prongs
27  of the qualified immunity analysis should be addressed first in light of the circumstances in the
28  particular case at hand."  Pearson, 555 U.S. at 236, 129 S. Ct. at 818.

1      When confronted with the question of whether Defendant Burgamy is entitled to
2  qualified immunity, the Court will first consider whether "[t]aken in the light most favorable to
3  the party asserting the injury, do the facts show the officer's conduct violated a constitutional
4  right?" Brousseau v. Haugen, 543 U.S. 194, 198 (2004).  In this instance, the Court shall first
5  address whether Defendant Burgamy used excessive force in violation of the Fourth
6  Amendment.

7      1.    Defendant Burgamy Did Not Use Excessive Force

8      Plaintiff alleges that Defendant Burgamy shot him without provocation or cause.  (ECF
9  No. 1 at § 30.)  Defendant Burgamy contends that he used reasonable force in the circumstances
10  presented here.  (ECF No. 25 at 10-11.)  Plaintiff counters that he was shot in the back and the
11  reports fail to mention this.  (ECF No. 38.)

12      Initially, while Plaintiff alleges that the use of excessive force violated his due process
13  rights, where a particular amendment provides an explicit textual source of constitutional
14  protection against a particular sort of government behavior, that Amendment, not the more
15  generalized notion of substantive due process, must be the guide for analyzing a plaintiff's
16  claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and
17  brackets omitted) overruled on other grounds by Unitherm Food Systems, Inc. V. Swift –
18  Eckrick, Inc., 546 U.S. 394 (2006); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).
19  The Supreme Court has held that the use of excessive force in making arrests is analyzed under
20  the Fourth Amendment's reasonableness test, not the substantive due process standard.  Graham
21  v. Conner, 490 U.S. 386, 391 (1989).  Plaintiff's excessive force claim does not implicate
22  substantive due process considerations.

23      The parties do not dispute that Plaintiff was attacking Defendant Burgamy in an attempt
24  to knock him out so that he could escape at the time that the shot was fired.  The issue here is
25  whether the use of deadly force was excessive under the circumstances.  The reasonableness
26  inquiry in excessive force cases is whether the officer's actions were " 'objectively reasonable'
27  in light of the facts and circumstances confronting" him. Smith v. City of Hemet, 394 F.3d 689,
28  701 (9th Cir. 2005).

1  "The 'reasonableness' of a particular use of force must be judged from the perspective of

2  a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilkinson v.

3  Torres, 610 F.3d 546, 550 (9th Cir. 2010) (quoting Graham v. Conner, 490 U.S. 386, 396

4  (1989)).  "The calculus of reasonableness must embody allowance for the fact that police officers

5  are often forced to make split-second judgments—in circumstances that are tense, uncertain, and

6  rapidly evolving—about the amount of force that is necessary in a particular situation." Graham,

7  490 U.S. at 397.  In determining whether Defendant Burgamy's actions were reasonable, the

8  Court must consider the risk of bodily harm that Defendant Burgamy posed to Plaintiff in light of

9  the threat that he was trying to eliminate. Scott, 550 U.S. at 383.

10  The "relevant factors in the Fourth Amendment reasonableness inquiry include "[1] the

11  severity of the crime at issue,[2] whether the suspect poses an immediate threat to the safety of

12  the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest

13  by flight." Smith, 394 F.3d at 701 (quoting Graham, 490 U.S. at 396).  The Supreme Court has

14  held that where an officer has probable cause to believe that a suspect poses a threat of serious

15  physical harm, either to the officer or to others, it is not unconstitutionally unreasonable to use

16  deadly force. Tennessee v. Garner, 471 U.S. 1, 12 (1985).

17  In this instance, Defendant Burgamy stopped Plaintiff to determine if he was the

18  individual who had been reported to be leaning on cars in the neighborhood.  Upon being

19  questioned, Plaintiff provided a false name.  While the severity of the crimes initially involved in

20  this instance weighs against the use of deadly force, at the time that Plaintiff was shot he was

21  engaged in committing assault and battery on a police officer.  The crime being committed at the

22  moment the shot was fired weighs in favor of the use of force.

23  The most important factor is whether the suspect poses a threat to the safety of the

24  officers or others. Smith, 394 F.3d at 702.  In this instance, Plaintiff was attempting to escape by

25  attacking Defendant Burgamy.  Since Plaintiff was initially compliant, Defendant Burgamy was

26  taken off guard by Plaintiff's initial attack.  As Defendant Burgamy was looking through

27  Plaintiff's wallet, Plaintiff attacked Defendant Burgamy by striking him and biting him in the

28  face. (U.F. 9.)  Photographs of Defendant Burgamy's injury show a large mouth shaped abrasion

on the left side of his neck, in close proximity to the officer's jugular vein.  Half of this abrasion is surrounded by teeth marks that have broken the skin.  (Exhibit 35-4.)  Defendant Burgamy testified that Plaintiff bit him on the left jaw for a few seconds and the pain was excruciating.  (ECF No. 28-2 at 24:8-25:11.)  It was at this same time that Defendant Burgamy felt Plaintiff's hand on his gun and he pushed the hand away.  (U.F. 9; ECF No. 28-2 at 26:21-27:10, 28:5-8, 30:17-31:21.)  Defendant Burgamy perceived this as an attempt by Plaintiff to obtain his gun.  (U.F. 9.)

It is at this point that the parties' view of the facts diverges.  However, the mere existence of some factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment.  Scott, 550 U.S. at 381.  Plaintiff's position is that the fact that the bullet entered his back is not consistent with Defendant's version of the facts and creates a disputed fact.

According to Plaintiff, Defendant Burgamy fired the shot while Plaintiff was biting Defendant Burgamy.  Plaintiff would be close to, if not up against, Defendant Burgamy's body.  Since Defendant Burgamy is right handed (ECF No. 28-2 at 26:10-11), Defendant Burgamy would be firing at Plaintiff with his right hand.  The bullet entering the left side of Plaintiff's back is consistent with these facts.

Viewing the facts in the light most favorable to Plaintiff, Defendant Burgamy claims that he was able to push Plaintiff away and create two to three strides between them.  (ECF No. 28-2 at 31:19-32:8.)  Defendant Burgamy just had a second to call for backup when Plaintiff advanced toward him again.  (Id. at 32:12-24.)  Plaintiff moved to an aggressive stance, slightly crouched with his knees slightly bent.  (Id. at 33:5-20.)  Defendant Burgamy told Plaintiff to stop, but Plaintiff started moving forward.  (Id. at 33:23-34:4.)  Defendant Burgamy pulled out his gun and fired at Plaintiff. [8]  (Id. at 34:6.)

Plaintiff argues that Defendant Burgamy's version of the facts does not mesh with the

---

[8] Plaintiff complains that Defendants did not provide a photograph of the injury to Plaintiff's back.  However, Plaintiff had the opportunity to submit evidence to show that a material issue of fact exists.  If Plaintiff believed that the location of the entry wound created a triable issue of fact, he should have submitted such evidence in support of his opposition.  The description of the entry wound contained in the record is not inconsistent with the testimony of the parties as to the incident alleged and Plaintiff's argument does not create a triable issue of material fact.

physical evidence, and Defendant argues that the bullet entering the left side of his back is consistent with Plaintiff turning away from the gun when it was drawn. Based upon the evidence presented by the parties, the fact that the bullet entered the left side of Plaintiff's back does not create a triable issue to defeat summary judgment.

The factual dispute as to whether Plaintiff was biting Defendant Burgamy at the time he was shot or whether Defendant Burgamy had pushed him away and Plaintiff was advancing for another attack is immaterial. Billington, 292 F.3d at 1185. In either circumstance, Plaintiff was actively and violently attacking Defendant Burgamy with the intent of causing serious injury so he could escape. Defendant Burgamy had already felt Plaintiff's hand in the area of his gun. Plaintiff had exhibited that he was intent on causing injury to Defendant Burgamy in his attempt to escape. In fact, Plaintiff had already caused injury to Defendant Burgamy by striking and biting him and Defendant Burgamy believed that if Plaintiff was able to get his gun he would shot Defendant Burgamy.

Plaintiff contends that it was unreasonable for Defendant Burgamy to have felt threatened by Plaintiff as he had searched him and knew that Plaintiff did not have a weapon. However, in this instance, Plaintiff was biting or had bitten the officer in the neck. Defendant Burgamy had a reasonable belief that Plaintiff posed an imminent threat of injury or death to himself. Further, as Defendant argued during the hearing, had Plaintiff been able to overcome Defendant Burgamy and get the gun he posed a threat to others.

At the August 27 hearing, Plaintiff argued that the investigation into this incident was not complete. For example, Defendant Burgamy was not questioned as to where his hand was positioned when he fired the gun, no tests were conducted to see if there was gun powder residue on Plaintiff or Defendant Burgamy, and no ballistic tests were conducted to determine the trajectory of the bullet that was fired. While Plaintiff contends that he would be able to question Defendant's expert at trial regarding these alleged discrepancies, no party has submitted any expert reports for consideration on this motion. Plaintiff has not submitted any evidence to create a triable issue of material fact on these issues. Additionally, the evidence before the Court is undisputed. Defendant Burgamy was the only officer on the scene and Plaintiff was in the act

14

1  of assaulting Defendant Burgamy when the shot was fired.

2        In deciding whether the use of force was reasonable, the court can also consider the

3  availability of alternate methods of subduing a suspect.  Smith, 394 F.3d at 703.  "Officers 'need

4  not avail themselves of the least intrusive means of responding to an exigent situation; they need

5  only act within that range of conduct we identify as reasonable.' "  Glenn v. Washington, 673

6  F.3d 864, 876 (9th Cir. 2011) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)).  In

7  his complaint, Plaintiff alleges that Defendant Burgamy had pepper spray or his baton available

8  to subdue Plaintiff.  However, Plaintiff was within two to three strides of Defendant Burgamy.

9  Even if Defendant Burgamy had the time to deploy his pepper spray, he would have run the risk

10 of the pepper spray rebounding back on him.  This could have created a greater danger to

11 Defendant Burgamy had the pepper spray not stopped Plaintiff.  Further, given the totality of the

12 facts and the short timeframe in which this incident occurred, this incident is one in which

13 Defendant Burgamy was forced to make a "split-second judgment[]—in circumstances that

14 [were] tense, uncertain, and rapidly evolving—about the amount of force that [was] necessary in

15 [the] particular situation."[9]  Graham, 490 U.S. at 397.  Defendant Burgamy's use of deadly force

16 was justified by his reasonable belief that Plaintiff presented an immediate threat of serious

17 physical harm or death.  See Price v. Sery, 513 F.3d 962, 968 (9th Cir. 2008) ("a law

18 enforcement officer's use of force will be justified, or not, by what that officer reasonably

19 believed about the circumstances confronting him").

20       Considering the totality of the circumstances presented here, Defendant Burgamy's use of

21 force was reasonable given the threat posed by Plaintiff.  See Wilkinson, 610 F.3d at 551

22 (finding deadly force justified where suspect driving minivan did not yield to commands and

23 accelerated in close proximity to two officers on foot); Billington v. Smith, 292 F.3d 1177, 1186

24 (9th Cir. 2002) (holding that deadly force was justified where suspect was violently resisted

---

25 [9] During oral argument at the August 27 hearing, Plaintiff raised for the first time an argument that there was a
    triable issue as to whether Defendant Burgamy created the situation that occurred here.  Plaintiff improperly raised
26 this argument by raising it for the first time during oral argument.  Moreover, even if the Court were to consider this
    contention, the facts here do not support such a finding.  Defendant Burgamy did not take any action which would
27 have provoked the attack by Plaintiff.  See Billington v. Smith, 292 F.3d 1177, 1190 (9th Cir. 2002) (where an
    officer recklessly or intentionally provokes a violent response it may make it unreasonable for him to use force to
28 defendant himself).

1   arrest, physically attacked officer and grabbed his gun); <u>Reynolds v. County of San Diego</u>, 84

2   F.3d 1162, 1168 (9th Cir. 1996) (overruled on other grounds by <u>Acri v. Varian Associates, Inc.</u>,

3   114 F.3d 999 (9th Cir. 1997) (holding that deadly force was reasonable where suspect, who had

4   been acting erratically, swung a knife at officer); <u>Garcia v. U.S.</u>, 826 F.2d 806 (1987) (findings

5   use of deadly force reasonable where plaintiff attacked a border patrol officer with a rock and

6   stick).

7           The Court shall next consider the second part of the analysis.  The question to be

8   considered is whether it was clearly established that a law enforcement office cannot use deadly

9   force when he was being physically attacked by a suspect.

10          2.      <u>The Right Was Not Clearly Established</u>

11          Qualified immunity protects an officer from suit even when he makes a decision that is

12  constitutionally deficient unless that right is clearly established at the time that the officer acted.

13  <u>Brousseau</u>, 543 U.S. at 198.  The inquiry as to whether the right was clearly established is

14  "solely a question of law for the judge."   .  <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199 (9th Cir. 2010)

15  (quoting <u>Tortu v. Las Vegas Metro. Police Dep't.</u>, 556 F.3d 1075, 1085 (9th Cir. 2009)).  The

16  right the official is alleged to have violated must be defined at the appropriate level of specificity

17  before the court can determine if it was clearly established.  <u>Dunn</u>, 621 F.3d at 1200.  In

18  considering whether it has been clearly established that Defendant Burgamy could not use deadly

19  force in this instance the Court looks to similar cases.

20          In <u>Mitchell v. City of Pittsburg</u>, No. C 90-00794 SI, 2011 WL 249458 (N.D. Cal. 2011),

21  while officers were executing a search warrant, a suspect grabbed the wrist of the hand in which

22  an officer was carrying his gun.  The officer responded by shooting the suspect.  <u>Id.</u> at *11.  The

23  court found that the officer reasonably believed that he risked losing control of his gun and the

24  use of deadly force was objectively reasonable.  <u>Id.</u>

25          In <u>Billington v. Smith</u>, 292 F.3d 1177 (9th Cir. 2002), an off duty police officer observed

26  the suspect driving recklessly and pursued the vehicle.  292 F.3d at 1180.  The suspect crashed

27  the vehicle and the officer approached to see if the suspect was injured and to arrest him for

28  reckless driving.  <u>Id.</u>  The officer had his gun drawn and as he approached the vehicle the driver

appeared to be unconscious, but he was actually just very drunk.  Id.  The officer identified himself and ordered the driver to place his hands on the steering wheel several times, but the driver did not respond.  Id.

The driver eventually replied by asking the officer if he was going to shoot him, and then put the car in gear in an attempt to drive away but the car was too damaged to drive.  Id.  The officer reached in to turn off the ignition and the driver grabbed his flashlight.  Id.  The officer was able to pull the flashlight away and the driver turned off the engine.  Id.

Before the officer was able to handcuff him, the driver began hitting the officer and grabbed him by his throat.  Id.  The officer tried to back away, but the driver clambered out the car window still holding onto the officer.  Id.  The driver yelled for the officer to shoot him and started swinging at the officer.  Id.  The officer hit the driver repeatedly with his flashlight, but the driver was undeterred and started kicking him in the stomach and groin.  Id.

As the officer attempted to ward him off, the driver placed him in a bear hug and grabbed his gun.  Id.  The driver landed a solid blow to the officer's head, cutting him and knocking off his glasses.  Id.  As they fought for control of the gun, the officer fired, hitting and killing the driver.  Id.  The Ninth Circuit held that where an officer is fighting with a suspect and losing it is not objectively unreasonable to use deadly force.  Id. at 1185.

Relying on Billington, in Jensen v. Burnsides, No. CV-06-2356-PHX-GMS, 2008 WL 4700020 (D. Ariz. Oct. 23, 2008), the court found an officer's use of deadly force to be justified. After being taken to the police station, a handcuffed arrestee attacked the police officer who arrested him without provocation.  2008 WL 4700020, at *1.  The arrestee knocked the officer to the floor and while he was semi-conscious, kicked the officer in the head.  Id.  The officer attempted to get up and the arrestee continued to kick and knee him in the head and torso.  Id.  The officer was able to get up and grab the arrestee's handcuffs and called for help.  Id.  The arrestee spun away from the officer and slammed him into a wall and the officer fired his Taser at him several times.  Id.  The arrestee continued to fight with the officer and grabbed for the Taser.  Id. at *1-2.  As they were fighting for the Taser, the officer un-holstered his pistol and told the arrestee to stop or he would shoot.  Id. at *2.  The officer fired, killing the arrestee.  Id.

1    The court found that the use of deadly force was objectively reasonable.  Id. at *6.

2         It appears clear that in the Ninth Circuit an officer is entitled to use deadly force when he

3    is engaged in hand to hand combat and losing.  Other courts have also recognized an officer's

4    right to use deadly force when engaged in hand to hand combat.

5         In Estate of Grigsby v. Falat, No. 90C1956, 2011 WL 2297680 (N.D. Ill. June 6, 2011), a

6    case based upon facts different from those here, in dicta the court recognized situations in which

7    an officer is put in reasonable fear for his life, such as when someone reaches for his weapon or

8    is engaging in hand to hand combat.  Id. at *2.  Similarly, in Estate of Jackson v. City of

9    Rochester, 705 F.Supp. 779 (W.D. N.Y. 1989), the Court recognized that requiring police

10   officers to use minimum of violence when attempting to stop a suspect from using deadly force

11   against police officers or others would expose police officers to unnecessary risks.  Id. at 784.

12        In a case that the Court finds most similar to that here, Tom v. Voida, No. IP 89 857 C

13   (S.D. Ind. May 3, 1991), an officer chased and violently struggled with a suspect when she

14   caught him.  Id. at *1.  The suspect broke free and the officer continued to chase him.  Id.  The

15   officer was able to catch him and another violent struggle ensued.  Id.  The officer backed away

16   and told the suspect to stop but the suspect moved toward the officer and she fired a shot which

17   missed.  Id.  The suspect stepped back but then came toward the officer again and she fired a

18   second shot killing him.  Id.  The court found that at the time the shot was fired the officer was

19   trying to protect herself and based upon these facts, the only reasonable conclusion to be drawn

20   was that it was objectively reasonable for the officer to believe that the suspect posed a real and

21   imminent threat of serious harm to her.  Id. at *6.  It was not unconstitutionally unreasonable for

22   the officer to shoot him.  Id.

23        In this instance, it is not clearly established that Defendant Burgamy's use of force

24   violated the Fourth Amendment.

25        3.    Defendant Burgamy Is Entitled to Qualified Immunity

26        Based on a review of the case law, it would not be clearly established that Defendant

27   Burgamy would be violating Plaintiff's rights under the Fourth Amendment in the circumstances

28   presented here.  Accordingly, even if Defendant Burgamy had used excessive force in this

1   instance he would be entitled to qualified immunity because the right was not clearly established

2   at the time he acted.

3         Based on the foregoing, the Court finds that Plaintiff has not demonstrated that a genuine

4   issue of material fact exists as to the Fourth Amendment claims raised in the first amended

5   complaint.  Accordingly, Defendant Burgamy is entitled to summary judgment on the Fourth

6   Amendment claims.

7         **B.    Monell Claim**

8         Cause of Action Two in Plaintiff's first amended complaint alleges that Defendants City

9   of Selma and Chief Whiteside "approved, ratified, condoned, encouraged and/or tacitly

10  authorized the continuing pattern and practice of misconduct and/or civil rights violations by

11  Selma Police Department officers."  (ECF No. 7 at ¶ 38.)  Cause of Action Three alleges that

12  Defendant City of Selma had "a custom, policy, or repeated practice of condoning and tacitly

13  encouraging the abuse of police authority, and disregard for the constitutional rights of

14  citizens[;]" (id. at ¶ 42); and that Plaintiff's "damages and injuries were caused by customs,

15  policies, patterns or practices of defendants City of Selma, Chief Whiteside, DOES 11 through

16  20, and each of them, of deliberate indifference in the training, supervision and/or discipline of

17  defendant Burgamy and DOES 1 through 10, and/or each of them[,]" (id. at ¶ 46).

18        Defendants move for summary judgment on the second and third causes of action against

19  Defendants City of Selma and Chief Whiteside.  While the Court agrees with Defendants that the

20  allegations in the complaint are conclusory, Defendants have not brought a motion to dismiss for

21  failure to state a claim.  Defendants address the claims on the merits.  Plaintiff does not address

22  the motion for summary judgment on these causes of action in his opposition.

23        1.    Custom or Policy

24        A local government unit may not be held responsible for the acts of its employees under a

25  respondeat superior theory of liability.  Monell v. Department of Social Services, 436 U.S. 658,

26  691 (1978).  Rather, a local government unit may only be held liable if it inflicts the injury

27  complained of through a policy or custom.  Waggy v. Spokane County Washington, 594 F.3d

28  707, 713 (9th Cir. 2010).

1      Generally, to establish municipal liability, the plaintiff must show that a constitutional

2  right was violated, the municipality had a policy, that policy was deliberately indifferent to

3  plaintiff's constitutional rights, "and the policy was the moving force behind the constitutional

4  violation." Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009) (citation omitted);

5  see also Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  In this

6  instance, Plaintiff has not shown that his constitutional rights were violated.  Since Plaintiff has

7  failed to establish an element of the claim, Plaintiff cannot prevail on a Monell claim against

8  Defendants City of Selma or Chief Whiteside.

9      Further, while Plaintiff alleges that Defendants City of Selma and Chief Whiteside were

10  aware of repeated acts of misconduct and use of excessive force by Defendant Burgamy and

11  other officers, Plaintiff has presented no such evidence to support the allegation that a custom or

12  policy existed.  Accordingly, there is no evidence before the Court of any other incident of

13  excessive force or misconduct by Defendant Burgamy or any other law enforcement officer

14  employed by the City of Selma.

15      b.    Failure to Train

16      "A municipality's failure to train an employee who has caused a constitutional violation

17  can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference

18  to the rights of persons with whom the employee comes into contact." Long v. County of Los

19  Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006); see City of Canton, Ohio v. Harris, 489 U.S. 378,

20  388 (1989).  "The issue is whether the training program is adequate and, if it is not, whether such

21  inadequate training can justifiably be said to represent municipal policy." Long, 442 F.3d at

22  1186, see Canton, 489 U.S. at 390.  The failure to train must be the moving force behind the

23  constitutional violation. Id. at 391.

24      Plaintiff has failed to show that his constitutional rights were violated, much less that

25  Defendants City of Selma and Whiteside failed to train law enforcement officers.  Further, while

26  Plaintiff alleges that Defendants City of Selma and Whiteside failed to train Defendant Burgamy

27  on the use of force, Defendant Burgamy had attended a P.O.S.T. certified police academy and

28  received basic P.O.S.T. certification.  (U.F. 28.)  Police officers in the City of Selma receiving

training on the use of force which is P.O.S.T. complaint, and Defendant Burgamy was trained in the appropriate use of force.  (U.F. 29, 30, 31.)  Plaintiff offers no evidence to the contrary other than the mere conclusory allegations in the complaint which are not sufficient to refute the evidence presented by Defendants.  Matsushita, 475 U.S. at 586 n.11.

Since the evidence presented by Defendants is undisputed, the Court ok finds that Plaintiff has not demonstrated that a genuine issue of material fact exists as to the Monell claims raised in the first amended complaint.  Accordingly, Defendants City of Selma and Whiteside are entitled to summary judgment on the policy and procedure and failure to train claims.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' partial motion for summary judgment is GRANTED;

2.      Judgment is entered for Defendant Burgamy on Plaintiff's claims for violation of the Fourth Amendment;

3.      Judgment is entered for Defendants City of Selma and Whiteside on the Monell claims based on policy and procedure and failure to train.

IT IS SO ORDERED.

Dated:   **August 29, 2014**

_____
UNITED STATES MAGISTRATE JUDGE