1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    KENYA DARRICK CALDWELL,

10             Plaintiff,

11        v.

12    CITY OF SELMA, et al.,

13             Defendants.

Case No.  1:13-cv-00465-SAB

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND SUPPLEMENTAL MOTION FOR
SUMMARY JUDGMENT

(ECF Nos. 69-74, 83, 93, 95-97, 103)

14

15        Plaintiff Kenya Darrick Caldwell, an incompetent person, by Ever Jean Kelley, his

16    conservator, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 28, 2013.

17    Currently before the Court is Defendants' second motion for summary judgment filed January

18    26, 2015, and supplemental motion for summary judgment filed March 31, 2015.

19        The Court heard oral arguments on April 15, 2015.  Ms. Kelley appeared for Plaintiff and

20    counsel David M. Overstreet and Rachelle Taylor Golden appeared for Defendants.  Having

21    considered the moving, opposition and reply papers, the declarations and exhibits attached

22    thereto, arguments presented at the April 15, 2015 hearing, as well as the Court's file, the Court

23    issues the following order.[1]

24                                        **I.**

25                                  **BACKGROUND**

26        Plaintiff suffered a traumatic brain injury after he was attacked by his stepfather on

27    January 1, 1999.   (First Am. Compl. ¶ 13.)    Petitioner's mother, Ms. Kelly, filed for

28    ---
[1] The parties have consented to the jurisdiction of the magistrate judge.  (ECF Nos. 15, 16.)

1    conservatorship in Fresno County Superior Court and was appointed as conservator of Plaintiff's

2    person and estate on March 25, 2003.  (Id. at ¶¶ 16, 17.)

3          Plaintiff was arrested on February 10, 2006, and filed the complaint in this action on

4    March 28, 2013.   On August 21, 2013, Plaintiff filed a first amended complaint against

5    Defendants City of Selma ("City"), Chief Thomas H. Whiteside ("Whiteside"), and Officer

6    Steve Burgamy.  Plaintiff brings this action against Defendant Burgamy alleging violations of

7    the right to be free from unreasonable searches and seizures, due process of law, excessive force,

8    equal protection, and freedom from interference with Plaintiff's zone of privacy;  against

9    Defendants City and Whiteside alleging they had knowledge of a pattern and practice of these

10   violations and did not act to prevent such violations.

11         Defendants filed a motion for summary judgment on the Fourth Amendment claims on

12   July 25, 2014.  On August 29, 2014, an order issued granting Defendants' motion for partial

13   summary judgment, as amended on September 3, 2014.  Following the motion for summary

14   judgment, the claims remaining in this action are against Defendant Burgamy for violation of

15   Plaintiff's right to due process of law and equal protection in violation of the Fourteenth

16   Amendment and interference with the zone of privacy in violation of the Ninth Amendment; and

17   against Defendants City and Whiteside for policies and procedures in violation of due process,

18   and equal protection of the laws under the Fourteenth Amendment, and the right to be free from

19   malicious prosecution.

20         Subsequently the parties entered into settlement negotiations.  Ms. Evers withdrew from

21   the settlement agreement and terminated her attorney.  Defendants moved to bring a second

22   motion for summary judgment due to the settlement agreement falling apart which was granted

23   by the Court on December 2, 2014.  The Court granted the motion to withdraw due to Ms. Evers

24   terminating her attorney's services on December 10, 2014.

25         Defendants filed a motion for summary judgment and supporting documents on January

26   26, 2015.  On February 24, 2015, the Court found Ms. Evers has the basic competency to protect

27   Plaintiff's interest in this action and she is proceeding pro se as conservator for Plaintiff.   On

28

1   March 27, 2015, Plaintiff filed an opposition to the motion for summary judgment.[2]   On March

2   31, 2015, Defendants filed a supplemental motion for summary judgment.  Plaintiff did not file

3   an opposition to the supplemental motion for summary judgment.  On April 9, 2015, Defendants

4   filed a reply to Plaintiff's March 27, 2015 opposition to the motion for summary judgment.

5                                                            **II.**

6                                  **SUMMARY JUDGMENT LEGAL STANDARD**

7              Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ...

8   if the movant shows that there is no genuine dispute as to any material fact and the movant is

9   entitled to judgment as a matter of law."  Summary judgment must be entered "against a party

10  who fails to make a showing sufficient to establish the existence of an element essential to that

11  party's case. . . ."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "[A] party seeking

12  summary judgment always bears the initial responsibility of informing the district court of the

13  basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

15  demonstrate the absence of a genuine issue of material fact."  <u>Id.</u>

16  ───────────────────

17  [2] Defendant moves to exclude all evidence presented by Plaintiff based on the grounds of lack of foundation,
    authentication, relevance, and hearsay.  (Defendants' Evidentiary Objections to Plaintiff's Evidence, ECF No. 104.)
18  **Error! Main Document Only.** To the extent the Court necessarily relied on evidence that has been objected to, the
    Court relied only on admissible evidence and, therefore, the objections are OVERRULED.  It is not the practice of
    the Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted.
19  This is particularly true when the evidentiary objections consist of general objections such as relevance.  <u>See</u> <u>Capital</u>
    <u>Records, LLC v. BlueBeat</u>, Inc., 765 F. Supp. 2d 1198, 1200 n.1 (C.D.Cal. 2010).

20
              Further, Defendants object to the evidence on lack of foundation and authentication, the relevant
21  documents relied upon by Plaintiff have been placed in evidence by Defendants.  The Court shall use Plaintiff's
    exhibits to reference those documents entered in the record by Defendants to resolve the claims at issue here.  To the
22  extent that Defendants object to police reports on the grounds of hearsay, the objection is overruled.  Federal Rule of
    Evidence 801(d)(2)(D) provides that a statement offered against an opposing party which was made by the party's
23  employee on a matter within the scope of that relationship while it existed is not hearsay.

24            Defendants argue that Plaintiff's evidence should be considered inadmissible due to Plaintiff's "egregious
    violation of the Stipulated Protective Orders and for the utter failure to comply with the Federal Rules of Evidence
25  and the Local Rules." (Memo. of P.&A. in Reply to Pl.'s Opp. To Mot. For Summary Judgment 6, ECF No. 103).
    The Court is aware that Plaintiff is proceeding pro se in part due to Defendants failure to move for summary
26  judgment on all claims in this action in their initial motion for summary judgment.  Accordingly, while pro se
    litigants are required to comply with the Federal Rules of Civil Procedure and Local Rules, the Court overrules
27  Defendants objections on this ground and shall consider the opposition of Plaintiff.  Although Plaintiff did not cite to
    any of the evidence in the opposition to the motion for summary judgment, as Plaintiff is proceeding pro se, the
28  Court has reviewed all evidence presented in the opposition taking special note of the evidence which was
    highlighted by Plaintiff.

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing

2  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

3  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

4  existence of this factual dispute, the opposing party may not rely upon the denials of its

5  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

6  admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

7  56(e); Matsushita, 475 U.S. at 586 n.11.

8  **III.**

9  **UNDISPUTED FACTS**

10    1.    In February 2006, Plaintiff lived in Chowchilla, with his mother.  Plaintiff had a

11  history of mental instability and was prescribed medication to control raging fits.[3]

12    2.    After the incident, Plaintiff told investigating officers that he ran away from

13  home.  He had been reported as a missing person days before the February 10, 2006 incident.

14  Plaintiff had not taken his medication during the time he was missing.

15    3.    At about 7:59 p.m., on February 10, 2006, a citizen called to report a suspicious

16  person reported as a "black gentleman" moving between cars.  The citizen reported that there had

17  been previous burglaries and tires stolen in the area.

18    4.    At about 8:01 p.m., Defendant Burgamy was dispatched to the 3400 block of

19  Jordan for a "suspicious BMA" (black, male, adult).

20    5.    After having observed a black male adult, Defendant Burgamy arrived in a

21  marked patrol car on scene at approximately 8:03 p.m.  Defendant Burgamy asked Plaintiff his

22  name to which Plaintiff responded with, "John" "Jake" or "Jacob" "Winston".  Plaintiff stated

23  that his name was "John Brown."  Defendant Burgamy suspected the names were false.

24

25  [3] Defendant argues that since Plaintiff's opposition does not comply with the Local Rules all undisputed facts should
be deemed admitted and the motion for summary judgment should be granted.  The Court shall consider the

26  opposition and Court's record in determining whether facts are in dispute.  Defendants' request to deem all
undisputed facts as admitted is DENIED.

27    In determining the undisputed facts, the Court considered which facts were undisputed in the prior motion
for summary judgment.  Accordingly, where Plaintiff objected to facts that were undisputed in the prior motion,

28  such objections are overruled.

6.    Plaintiff felt that he was being stopped because he was a black man in a white neighborhood.  Plaintiff admitted that a resident of the neighborhood called the police.

7.    Defendant Burgamy requested and Plaintiff gave permission to search Plaintiff for weapons for their mutual safety.  After requesting and receiving Plaintiff's permission to extract objects from Plaintiff, and laying them on the hood of the patrol car, Defendant Burgamy began to go through Plaintiff's wallet.

8.    While searching for identification of Plaintiff, Defendant Burgamy had Plaintiff sit on a bumper of the patrol vehicle.

9.    As Defendant Burgamy was going through Plaintiff's items, Plaintiff attacked Defendant Burgamy, striking him and biting his face causing a wound.  Defendant Burgamy felt pressure on his handgun which he perceived as an attempt by Plaintiff to obtain his handgun.

10.    At 8:10 p.m., Defendant Burgamy radioed that he needed backup.  Almost immediately, Defendant Burgamy radioed that he had discharged his weapon and requested an ambulance.

11.    Plaintiff attacked Defendant Burgamy by running and swinging at and biting him; intending to knock Defendant Burgamy out and escape.

12.    Plaintiff claimed that Defendant Burgamy struck him twice in the forehead with his hands, and Plaintiff then bit Defendant Burgamy.

13.    Plaintiff admitted causing the bite mark on Defendant Burgamy's face.

14.    Plaintiff claims that he was biting Defendant Burgamy when he was shot.

15.    Just before pulling the trigger, Defendant Burgamy felt that Plaintiff was seriously trying to hurt, or was trying to kill him.

16.    Defendant Burgamy believed that Plaintiff had tried to get his handgun, and if Plaintiff was successful, he would shoot Defendant Burgamy.

17.    One round from a .40 caliber duty weapon was fired by Defendant Burgamy, and only one matching bullet casing was found at the scene.

18.    After firing the shot, Defendant Burgamy notified dispatch of having done so, and requested an ambulance.

1    19.    It was not until Officer Gonzalez arrived on the scene that it was discovered that

2    Plaintiff had been shot.

3    20.    The bullet which was just under the surface of Plaintiff's skin was removed under

4    local anesthesia as an outpatient procedure.

5    21.    The gunshot wound was the only physical injury Plaintiff claimed as a result of

6    the incident.

7    22.    Plaintiff was not handcuffed before the shooting.

8    23.    After the shooting, Plaintiff was arrested by proxy at the hospital for violation of

9    Penal Code sections for causing injury to Defendant Burgamy.

10    24.    Peace Officer Standards and Training (P.O.S.T.) is recognized as the authority

11    that governs the training of police officers in California.  These professional standards are similar

12    to other states across the nation.

13    25.    The Selma Police Department is a fully certified law enforcement agency

14    consistent with the minimum standards set forth by P.O.S.T.  Officers with the Selma Police

15    Department are required to attend a P.O.S.T. certified academy.  They receive ongoing training

16    through field training programs, on-the-job training, advanced officer courses, and various

17    classes and seminars offered throughout the State of California.  The Selma Police Department

18    has had a training unit that ensures Selma police officers receive training in compliance with

19    P.O.S.T.  The training provided by the Selma Police Department with regard to use of force and

20    use of deadly force is in compliance with P.O.S.T. standards.

21    26.    Prior to February 10, 2006, Defendant Burgamy had attended a P.O.S.T. certified

22    police academy and received P.O.S.T. certification.

23    27.    Consistent with its policy regarding the use of force, the Selma Police Department

24    trains its officers that they can use reasonable force to defend themselves or others, affect an

25    arrest or detention, prevent escape and/or overcome resistance.  Officers are trained to assess the

26    situation and use the amount of force that is reasonable under the circumstances.

27    28.    The training regarding the use of deadly force provided to Selma Police

28    Department officers is P.O.S.T. compliant.

1    29.    Defendant Burgamy was trained in the appropriate use of force.

2    30.    Selma Police Department's policies governing use of deadly force are consistent

3    with other law enforcement agencies within the State of California.

4    31.    P.O.S.T. does not exclude the use of deadly force when an officer reasonably

5    believes that such force is necessary to protect him or others from an immediate threat of death

6    or serious bodily injury.

7    32.    At no time has the Selma Police Department had a policy, practice, or custom of

8    improperly supervising its police officers.

9    33.    Administrative staff of the Selma Police Department review and examine

10   incidents in which force is used in order to determine whether the force used was reasonable in

11   light of the circumstances facing the officers; and take appropriate action when necessary.

12   Furthermore, it has been the policy and practice of the Selma Police Department to conduct

13   thorough investigations into allegations of misconduct on the part of its police officers.

14   34.    A criminal complaint was filed against Plaintiff on February 15, 2006, <u>People v.</u>

15   <u>Kenya Darrick Caldwell</u>, No. F06800P074-7.

16   35.    The criminal case No. F06800P074-7 was terminated for "other reasons" on the

17   "court's own motion" because the case timed out November 8, 2009.

18                                    **VI.**

19                                **DISCUSSION**

20        Defendants move for summary judgment on the remaining claims in this action.  Plaintiff

21   opposes the motion arguing the Fourth Amendment claim against Defendant Burgamy should

22   not have been decided on summary judgment.  To the extent that Plaintiff is attempting to

23   oppose the prior order granting summary judgment that order is not at issue in this motion.  The

24   Court has considered Plaintiff's Fourth Amendment claims and determined that Defendants are

25   entitled to summary judgment.  The issues to be addressed in this second motion for summary

26   judgment are the claims that remain after the order granting summary judgment on the Fourth

27   Amendment claims.

28

                                        7

1    A.     **Fifth Amendment Claims**

2         Plaintiff brings due process and equal protection claims in this action under the Fifth

3    Amendment.  The Due Process Clause of the Fifth Amendment provides that no one shall "be

4    deprived of life, liberty, or property without due process of law."  It is well established that the

5    Due Process Clause and the equal protection component of the Fifth Amendment do not apply to

6    the actions of state or local governments.  Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th

7    Cir. 2001) (dismissing Fifth Amendment due process and equal protection claims brought

8    against the City of Los Angeles because the defendants were not federal actors); see also Bingue

9    v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he Fifth Amendment's due process clause

10   applies only to the federal government."); Sanchez v. City of Fresno, 914 F.Supp.2d 1079, 1098

11   (E.D. Cal. 2012) (due process and equal protection components of Fifth Amendment apply only

12   to the federal government).  As this action is brought against defendants who are employed by or

13   are municipalities, the Fifth Amendment Due Process Clause does not apply here.

14        Since Plaintiff's claims in this action do not arise under the Fifth Amendment,

15   Defendants' motion for summary judgment on the Fifth Amendment claims is granted.

16   B.     **Fourteenth Amendment Claims**

17        As the actions alleged here were undertaken by a City of Selma police officer any

18   cognizable claims would arise under the Fourteenth Amendment which provides that no State

19   shall "deprive any person of life, liberty or property, without due process of law" "nor deny to

20   any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.

21        1.     Due Process

22        Plaintiff alleges that the conduct alleged violated his right to due process of law.

23   Defendants move for summary judgment on the ground that Plaintiff's claims are subsumed by

24   the Fourth Amendment.  "The Due Process Clause of the Fourteenth Amendment encompasses

25   two types of protections: substantive rights (substantive due process) and procedural fairness

26   (procedural due process)."  Sanchez, 914 F.Supp.2d at 1099.  Relevant in this action is

27   substantive due process which "forbids the government from depriving a person of life, liberty,

28   or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in

8

1  the concept of ordered liberty.' " <u>Corales v. Bennett</u>, 567 F.3d 554, 568 (9th Cir. 2009)

2  (citations omitted).  "[T]o establish a violation of substantive due process . . . , a plaintiff is

3  ordinarily required to prove that a challenged government action was clearly arbitrary and

4  unreasonable, having no substantial relation to the public health, safety, morals, or general

5  welfare." <u>Patel v. Penman</u>, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and

6  brackets omitted), <u>overruled on other grounds by</u> <u>Unitherm Food Systems, Inc. v. Swift Eckrich,</u>

7  <u>Inc.</u>, 546 U.S. 394 (2006); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998).  Only the

8  most egregious government conduct will be found to be arbitrary in the constitutional sense.

9  <u>County of Sacramento</u>, 523, U.S. at 846.

10      Defendants argue that Plaintiff's due process claims fail as a matter of law as the

11  allegations of excessive force raised in this action occurred during an investigatory stop and

12  therefore should be evaluated under the Fourth Amendment.  "Section 1983 'is not itself a source

13  of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

14  conferred.' " <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (quoting <u>Baker v. McCollan</u>, 443

15  U.S. 137, 144, n. 3 (1979)).  Initially, to decide if the due process clause is the appropriate

16  violation alleged, the Court must determine whether the more particularized Fourth Amendment

17  "provides an explicit textual source of constitutional protection against a particular sort of

18  government behavior."  <u>Albright</u>, 510 U.S. at 271.  As relevant here, the Framers of the

19  Constitution 'considered the matter of pretrial deprivations of liberty and drafted the Fourth

20  Amendment to address it."  <u>Id.</u> at 274.

21      In <u>Graham v. Conner</u>, 490 U.S. 386 (1989), the Supreme Court consider whether claims

22  of excessive force during an investigatory stop should be analyzed under the Fourth

23  Amendment's prohibition against unreasonable search and seizure or the substantive due process

24  standard.  <u>Graham</u>, 490 U.S. at 394.  Where an excessive force claim arises in the context of an

25  investigatory stop or arrest, it is properly characterized as invoking the Fourth Amendment

26  protections against unreasonable search and seizure.  <u>Graham</u>, 490 U.S. at 395.  The <u>Graham</u>

27  court held that "all claims that law enforcement officers have used excessive force—deadly or

28  not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

1  analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a

2  'substantive due process' approach." <u>Id.</u> at 395.

3      The Ninth Circuit has held that the claims of an arrestee who is detained without a

4  warrant are evaluated under the Fourth Amendment until the time the arrestee is released or

5  found to be legally in custody based upon a probable cause arrest.  <u>Pierce v. Multnomah County,</u>

6  <u>Or.</u>, 76 F.3d 1032, 1043 (9th Cir. 1996).  The circumstances in this case show that Plaintiff was

7  shot during an investigative stop and Plaintiff has not alleged any facts or presented any evidence

8  to the contrary.

9      Defendant Burgamy contacted Plaintiff in response to a report of a suspicious black male

10  in the area.  (U.F. 4, 5, 6.)  The Court has previously found that the contact between Defendant

11  Burgamy and Plaintiff was consensual.   (ECF No. 48 at 7:18-9:25.)   After Plaintiff gave

12  Defendant Burgamy a false name, Defendant Burgamy had Plaintiff sit on the front bumper of

13  his patrol vehicle while he looked for identification in Plaintiff's wallet.  (U.F. 8, 9.)  As

14  Defendant Burgamy was looking through Plaintiff's wallet, Plaintiff attacked him and bit him

15  intending to knock Defendant Burgamy out and escape.[4]  (U.F. 10, 12.)   As Plaintiff was

16  attacking Defendant Burgamy, Defendant Burgamy shot him.  (U.F. 15, 18.)

17      Plaintiff also alleges in his complaint that after he was shot, Defendant Burgamy left him

18  handcuffed on the ground with a bullet lodged in his back and did not offer first aid.  (ECF No. 7

19  at ¶ 26.)  Defendants argue that after the shooting, Defendant Burgamy had no further contact

20  with Plaintiff, and did not even put handcuffs on him.  (ECF No. 70 at 10-11.)

21      The undisputed evidence shows that at 8:07 p.m. Defendant Burgamy requested a warrant

22  check on a subject by the name of John Winston.  (Complaint History, ECF No. 83 at 35.)

23  Officer Gonzalez, who was responding to assist on the call, heard shouting over the radio and

24  arrived on the scene within seconds.  (Report of Officer Ben Gonzalez, ECF No. 83 at 14.)

25  When Officer Gonzalez arrived on the scene, he saw Defendant Burgamy pointing his gun at

26  Plaintiff who was lying on his stomach.  (<u>Id.</u>)  Defendant Burgamy was ordering Plaintiff to put

27
28
[4] In his opposition, Plaintiff argues that it is hearsay that Plaintiff started the altercation, however it is undisputed that Plaintiff attacked Defendant Burgamy as Defendant Burgamy was going through Plaintiff's wallet in an attempt to get away.  (Depo. of Kenya Darrick Caldwell 102:1-6, 102:17-104:16, ECF No. 28-1 at 23-25.)

1  his hands where he could see them.  (Id.)  At 8:10 p.m., as Officer Gonzalez handcuffed Plaintiff,

2  he heard Defendant Burgamy say over the radio, "shots fired, we need an ambulance."  (Id.,

3  Complaint History, ECF No. 83 at 36.)  Sgt. Santillan arrived at 8:13 p.m.  (Report of Sgt.

4  Santillan, ECF No. 83 at 18.)  When he arrived Defendant Burgamy was standing over Plaintiff

5  who was handcuffed and was laying on his right side.  (Id.)

6          A claim of failure to provide medical care to a pretrial detainee arises under the due

7  process clause of the Fourteenth Amendment.  Maddox v. City of Los Angeles, 792 F.2d 1408,

8  1414 (9th Cir. 1986).  Due process is satisfied where the officer promptly summons medical care

9  or takes the injured detainee to the hospital.  Id. at 1415.  In evaluating a claim of failure to

10 provide medical care for an individual who was injured during an arrest, the Ninth Circuit has

11 held that Maddox sets the standard.  Tatum v. City and County of San Francisco, 441 F.3d 1090,

12 1099 (9th Cir. 2006).  Therefore, "a police officer who promptly summons the necessary medical

13 assistance has acted reasonably for purposes of the Fourth Amendment."  Although it appears

14 that no one was sure whether Plaintiff had been shot, Defendant Burgamy summoned medical

15 care as soon as assistance arrived on the scene and the assisting officer had taken charge of

16 Plaintiff.  Based upon the facts before the Court, Defendant Burgamy promptly summoned

17 medical care for Plaintiff.  Plaintiff has not met his burden of demonstrating that a genuine issue

18 of material fact exists, and Defendant Burgamy is entitled to summary judgment on the medical

19 care claim.

20         As the Fourth Amendment provides the explicit textual source of constitutional

21 protection against this sort of physically intrusive governmental conduct, the Fourth Amendment

22 and not the more generalized notion of substantive due process guides the analysis of the pretrial

23 detention claims.  Graham, 490 U.S. at 395.  Accordingly, Defendants' motion for summary

24 judgment on the Due Process claim is granted.

25         2.    Equal Protection

26         Plaintiff alleges that his right to equal protection under the law has been violated by the

27 actions of Defendant Burgamy.  Defendants move for summary judgment on the ground that

28 Plaintiff has failed to show discriminatory intent to support an equal protection claim.  Defendant

1  Burgamy has met his burden so the burden shifts to Plaintiff to establish that a genuine issue as

2  to any material fact actually does exist.  Matsushita, 475 U.S.at 586.

3          An equal protection claim requires a showing that the defendants acted with the intent or

4  purpose to discriminate against the plaintiff based upon his membership in a protected class.

5  Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005); Lee, 250 F.3d at 686.  The

6  first inquiry in the equal protection claim is to identify whether the plaintiff is a member of a

7  protected class.  Id.  Generally, a classification is suspect if it is directed at a discrete and insular

8  minority group.  Sanchez, 914 F.Supp.2d at 1108.  Race, alienage, national origin and to some

9  degree gender and illegitimacy have been found to be suspect classes.  City of Cleburne, Tex. v.

10 Cleburne Living Center, 473 U.S. 432, 440-41 (1985).  Plaintiff is African American, and

11 therefore, is a member of a protected class.

12         To show a violation of the Equal Protection clause, Plaintiff is required to show proof of

13 racially discriminatory intent or purpose.  Village of Arlington Heights v. Metropolitan Housing

14 Development Corp., 429 U.S. 252, 265 (1977).  In opposition to the motion for summary

15 judgment, Plaintiff contends that racial profiling is evident in this action because a citizen

16 reported a suspicious black male in the area and Defendant Burgamy noted in his report that he

17 recognized Plaintiff as an individual he had observed earlier at a Denny's restaurant.

18         Racial profiling can constitute a deprivation of a citizen's right to equal protection under

19 the law.  Whren v. United States, 517 U.S. 806, 813 (1996) ("the Constitution prohibits selective

20 enforcement of the law based on considerations such as race[,]" and "the constitutional basis for

21 objecting to intentionally discriminatory application of laws is the Equal Protection Clause[.]")

22 Under the Equal Protection Clause, "a law enforcement officer's discriminatory motivations can

23 give rise to a constitutional violation even where the unequal treatment occurred during an

24 otherwise lawful criminal detention."  Ortega Melendres v. Arpaio, 598 F. Supp. 2d 1025, 1036

25 (D. Ariz. 2009).  In determining whether a criminal law is being administered against a class of

26 persons in a manner that violates equal protection, the Supreme Court held that the claim draws

27 on "ordinary equal protection standards."  United States v. Armstrong, 517 U.S. 456, 465 (1996)

28 (considering a selective prosecution claim).  To prove such a claim the plaintiff must

1  demonstrate that the administration of the law "had a discriminatory effect and that it was
2  motivated by a discriminatory purpose." Armstrong, 517 U.S. at 465.

3       In his first amended complaint, Plaintiff alleges that he was an African-American male
4  walking through a predominantly white neighborhood when a resident called to report a
5  suspicious person identified as a black male adult. (Compl. ¶ 21, ECF No. 7.)  While Plaintiff
6  argues that this is evidence of racial profiling, the fact that Defendant Burgamy was responding
7  to a call of a suspicious black male and stopped Plaintiff because he was a black male and was
8  found in the area in close proximity to the time of the call does not create an inference of racial
9  animus.  Based upon the facts before the Court, Defendant Burgamy stopped Plaintiff because he
10 matched the description given in the 911 call not because of Plaintiff's race.

11      Plaintiff contends that Defendant Burgamy's statement that he recognized Plaintiff from
12 seeing him earlier at Denny's is evidence of racial profiling.  There is no evidence that
13 Defendant Burgamy contacted Plaintiff after seeing him at Denny's based upon Plaintiff's race.
14 The evidence before the Court demonstrates that Plaintiff was contacted because of the report of
15 a suspicious individual reported in the area.  Defendant Burgamy's statement that he recognized
16 Plaintiff from seeing him early in the evening does not contain any mention of race.  Even if it is
17 inferred that Defendant Burgamy recognized Plaintiff because of his race, that is not evidence
18 that any of the alleged events occurred because of a discriminatory purpose on the part of
19 Defendant Burgamy.

20      Finally, Plaintiff references a statement that Defendant Burgamy was angry after the
21 incident. (Report of Sgt. Frank Santillan, ECF No. 83 at 18.)  However, Plaintiff does not point
22 to, nor does the Court find, any statements made by Defendant Burgamy that reference Plaintiff's
23 race or demonstrate any animus toward Plaintiff based upon his race.  The fact that Defendant
24 Burgamy was angry after being attacked and bitten in the neck by Plaintiff does not display
25 racial animus, but rather appears to be a reaction to being attacked by Plaintiff.

26      To prevail on the claim that Defendant Burgamy acted with an improper purpose,
27 Plaintiff must show that Defendant Burgamy acted on the basis of an impermissible ground such
28 as race. Lacey v. Maricopa County, 693 F.3d 896, 922 (9th Cir. 2012).  Plaintiff has not pointed

1   to any statements or acts by Defendant Burgamy that show that Defendant Burgamy acted with

2   discriminatory intent or purpose on the date of the incident.   While Plaintiff may sincerely

3   believe that the events of the evening were based upon his race, that is insufficient to create a

4   genuine issue of material fact.   During the April 15, 2015 hearing, Plaintiff contended that the

5   evidence presented in the opposition was sufficient to show a genuine issue of material fact.   To

6   defeat summary judgment, Plaintiff must tender evidence of specific facts in support of its

7   contention that the dispute exists.   Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.

8   Plaintiff has presented no evidence that Defendant Burgamy acted with the intent or purpose of

9   discriminating against Plaintiff due to his race.   Plaintiff has not met his burden of showing that a

10  genuine issue of material fact exists and Defendant Burgamy is granted summary adjudication on

11  the equal protection claim.

12          **C.     Ninth Amendment**

13          "The language and history of the Ninth Amendment reveal that the Framers of the

14  Constitution believed that there are additional fundamental rights, protected from governmental

15  infringement, which exist alongside those fundamental rights specifically mentioned in the first

16  eight constitutional amendments."   <u>Griswold v. Connecticut</u>, 381 U.S. 479, 488 (1965)

17  (concurring opinion).   The Ninth Amendment does not independently secure any constitutional

18  rights for the purposes of making a constitutional violation.   <u>San Diego County Gun Rights</u>

19  <u>Committee v. Reno ("Reno")</u>, 98 F.3d 1121, 1125 (9th Cir. 1996).   The Ninth Amendment

20  encompasses only those rights " 'so basic and fundamental and so deep-rooted in our society' to

21  be truly 'essential rights,' and which nevertheless, cannot find direct support elsewhere in the

22  Constitution."   <u>United States v. Choate</u>, 576 F.2d 165, 181 (9th Cir. 1978) (quoting <u>Griswold</u>,

23  381 U.S. at 491).   The Ninth Amendment is not the source of rights, but is simply a rule about

24  how to read the Constitution.   <u>Reno</u>, 98 F.3d at 1125.

25          "While the Supreme Court has expressed uncertainty regarding the precise bounds of the

26  constitutional "zone of privacy," its existence is firmly established."   <u>In re Crawford</u>, 194 F.3d

27  954, 958 (9th Cir. 1999).   At least two distinct kinds of privacy interests have been identified as

28  being protected by the United States Constitution: the individual interest in avoiding disclosure

1   of personal matters, and the interest in independence in making certain kinds of important

2   decisions.  Id.  As found in the August 29, 2014 order granting partial summary judgment,

3   Plaintiff has not submitted any evidence to create a genuine issue of material fact that his privacy

4   rights have been violated by any of the acts alleged in the complaint.  Defendants' motion for

5   summary judgment on the Ninth Amendment claim is granted.

6       **D.    Malicious Prosecution**

7       Defendants argue that Plaintiff cannot meet the elements to prove a claim of malicious

8   prosecution.[5]  The elements of malicious prosecution claim in California are "(1) the initiation of

9   criminal prosecution, (2) malicious motivation, and (3) lack of probable cause."  Usher v. City of

10  Los Angeles, 828 F.2d 556, 562 (1987).   "The test is whether the defendant was actively

11  instrumental in causing the prosecution."  Mazzetti v. Bellino, __ F.Supp.3d __, 2014 WL

12  5781026, *4 (E.D. Cal. Nov. 5, 2014) (quoting Sullivan v. County of Los Angeles, 12 Cal.3d

13  710, 720 (1974)).   To prevail on a malicious prosecution claim under section 1983, a plaintiff

14  must prove that he was prosecuted by the defendants with malice and without probable cause and

15  that the prosecution was for the purpose of denying him equal protection or another specific

16  constitutional right.  Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); Lacey,

17  693 F.3d at 919.  A malicious prosecution claim may be brought against prosecutors or against

18  the individuals who wrongfully caused the prosecution.  Smith v. Almada, 640 F.3d 931, 938

19  (9th Cir. 2011).  Probable cause is an absolute defense to malicious prosecution.  Lassiter v. City

20  of Bremerton, 556 F.3d 1049, 1054 (9th Cir. 2009).

21      In order to prove malicious prosecution, Plaintiff must show that the prior proceeding

22  was commenced by or at the direction of the defendant and it was 1) pursued to a legal

23  termination favorable to plaintiff; 2) brought without probable cause; and 3) initiated with

24  malice.  Ayala v. Environmental Health, 426 F.Supp.2d 1070, 1083 (E.D. Cal. 2006).   As

25  discussed below, Plaintiff has not met his burden of showing that a genuine issue of material fact

26  exists and Defendants are entitled to summary adjudication on the malicious prosecution claim.

27
28
[5] Defendants do not address whether they are proper defendants in a malicious prosecution action under section 1983, so the Court will assume for the purposes of this motion that this action can proceed against Defendants City of Selma and Whiteside on the malicious prosecution claim.

1            1.     Legal Termination Favorable to Plaintiff

2            Defendant argues that Plaintiff cannot show that the criminal case had a legal termination

3    favorable to Plaintiff since it was terminated on the court's own motion.  "The theory underlying

4    the requirement of favorable termination is that it tends to indicate the innocence of the accused,

5    and coupled with the other elements of lack of probable cause and malice, establishes the tort,

6    that is, the malicious and unfounded charge of crime against an innocent person."  Jaffe v. Stone,

7    18 Cal.2d 146, 150 (1941).  Where the dismissal is of such a nature as to indicate the innocence

8    of the accused, it is a favorable termination sufficient to satisfy the requirement.  Jaffe, 18 Cal.2d

9    at 150.

10           Defendants argue that the dismissal in this instance is on technical grounds, for

11   procedural reasons, or for any other reason not inconsistent with his guilt, and therefore does not

12   constitute a favorable termination for Plaintiff.  Jaffe, 18 Cal.2d at 150.  However, where "the

13   prosecuting officials press the charge before the committing magistrate, the accused does not

14   seek improperly to prevent a fair hearing, and the complaint is dismissed for failure to produce a

15   case against the defendant, there is a favorable termination sufficient to form the basis of a tort

16   action."  Id. at 151.  The criminal charges against Plaintiff were dismissed because the case

17   timed out.  (ECF No. 97-2 at 1.)  The dismissal in this action was a result of the failure to

18   prosecute the criminal action.  A dismissal that is based on an act fairly chargeable to the

19   complainant lays the foundation for a malicious prosecution action.  Jaffe, 18 Cal.2d at 152; see

20   also, Minasian v. Sapse, 80 Cal.App.3d 823, 827 (1978) (dismissal for lack of prosecution

21   reflects the merits of the action and is favorable to defendant).  Therefore, the action was legally

22   terminated in favor of Plaintiff for the purposes of a malicious prosecution claim.

23           2.     Probably Cause to Prosecute

24           Plaintiff was arrested and charged in a single count complaint with violation of California

25   Penal Code section 245(c).  (ECF Nos. 97-2; 97-3 at 2.)  "Probable cause is 'a suspicion founded

26   upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge

27   is true."  Centers v. Dollar Markets, 99 Cal. App. 2d 534, 540 (1950) (citations omitted).

28   Probable cause exists where the individual prosecuting the action is in possession of sufficient

1 information or facts to cause a reasonable person to honestly believe the charge is true. <u>Centers</u>,

2 99 Cal.App.2d at 541.

3      Penal Code section 245(c) makes unlawful an assault with a deadly weapon or other

4 means likely to produce great bodily injury upon the person of a peace office where the

5 individual reasonably knew that the individual was a police officer in the performance of his

6 duties. Section 245 can be violated by use of a deadly weapon or by means likely to produce

7 great bodily injury. It is means likely to produce great bodily injury that would be relevant here.

8      There is no dispute that Plaintiff attacked Defendant Burgamy in an attempt to escape

9 during an investigatory stop. (U.F. 10, 12.) During the attack, Plaintiff bit the neck of

10 Defendant Burgamy leaving an abrasion and teeth marks. (U.F. 10, 14). The facts show that

11 Plaintiff was aware that Defendant Burgamy was a law enforcement officer and was engaged in

12 the performance of his duties. Plaintiff attacked Defendant Burgamy because he was afraid that

13 Defendant Burgamy was going to make him return home.

14      Under the statute, force is sufficient if it is likely to sustain great bodily injury. <u>People v.</u>

15 <u>Pullins</u>, 95 Cal.App.2d 902, 904 (1950). California courts have found that a bite is sufficient to

16 sustain a conviction for violation of section 245. <u>See</u> <u>Pullins</u>, 95 Cal.App.2d at 903-904

17 (chewing on finger until flesh was lacerated and bone broken); <u>People v. Holian</u>, No. A101347,

18 2004 WL 171577, at *3-4 (2004) (unreported) (biting officer, slamming his head and face on

19 sidewalk and jumping on knee); <u>People v. Scruggs</u>, No. B148387, 2002 WL 241457, at *2

20 (2002) (unreported) (biting arm with sufficient force to leave bloody laceration). Although

21 Plaintiff contends that he bit Defendant Burgamy in self-defense, the assertion is not supported

22 by the record. Plaintiff attacked Defendant Burgamy in an attempt to escape. Plaintiff claims

23 that he may have not struck Defendant Burgamy during the initial attack, and therefore,

24 Defendant Burgamy actually struck Plaintiff first. However, it is undisputed that Plaintiff

25 initiated the confrontation by charging at Defendant Burgamy attempting to strike him and knock

26 him out. The facts here do not support a claim that Plaintiff bit Defendant Burgamy in self-

27 defense. Since there was probable cause to bring the criminal charges against Plaintiff his

28 malicious prosecution claim fails. <u>Lassiter</u>, 556 F.3d at 1054.

1          3.      Initiation with Malice

2          Malice means that the action was prosecuted with a wrongful motive.   Centers, 99

3    Cal.App.2d at 451.   This does not require that the action was prosecuted due to anger or

4    vindictiveness.   Id.   It is sufficient if it appears that the action was prosecuted with bad faith to

5    vex, annoy or wrong the adverse party.   Id.   Malice can be proven by direct evidence or it can be

6    inferred.   Id. at 542.   Malice can be inferred from the want of probable cause to prosecute an

7    action.   MacDonald v. Joslyn, 275 Cal.App.2d 282, 292 (1969).

8          Even assuming there had been an absence of probable cause, Plaintiff has presented no

9    evidence that criminal charges were prosecuted with a wrongful motive.   Plaintiff has failed to

10   meet his burden of demonstrating that a genuine issue of material fact exists.   Defendants are

11   entitled to summary adjudication on the malicious prosecution claim.[6]

12        **E.      Policy Claims**

13        The second cause of action in the first amended complaint is brought against Defendants

14   City and Whiteside alleging that they were aware of repeated acts of misconduct by Defendant

15   Burgamy and repeated acts of unwarranted shooting of unarmed persons by officers of the Selma

16   Police Department.   (ECF No. 7 at ¶¶ 36, 37.)   Additionally, the complaint alleges that Selma

17   police officers engaged in a pattern and practice of misconduct that resulted in the violation of

18   Plaintiff's rights.   Plaintiff's third cause of action is brought against Defendants City and

19   Whiteside alleging a custom, policy, or practice of condoning the abuse of police authority and

20   disregard for the rights of citizens and failure to train, supervise and discipline members of the

21   police force.   (Id. at ¶¶ 42, 45.)

22        1.      Respondeat Superior Liability

23        **a.      Supervisory Liability Legal Standard**

24        Supervisory personnel may not be held liable under section 1983 for the actions of

25   subordinate employees based on respondeat superior, or vicarious liability.   Crowley v.

26   Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and

---

27   [6] Although Defendants supplemental motion seeks dismissal without leave to amend, the Court notes that the motion
     before it is for summary judgment.  Therefore, the Court shall grant summary judgment on the claims addressed
28   herein.

1   Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013).   "A defendant may be held liable as a

2   supervisor under § 1983 'if there exists either (1) his or her personal involvement in the

3   constitutional deprivation, or (2) a sufficient causal connection between the supervisor's

4   wrongful conduct and the constitutional violation.'"   Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir.

5   2011) (quoting Hansen v. Black, 885 F.2d 542, 646 (9th Cir. 1989)).   Under this theory of

6   liability "[s]upervisory liability exists even without overt personal participation in the offensive

7   act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation

8   of constitutional rights' and is 'the moving force of a constitutional violation.' "   Crowley, 734

9   F.3d at 977 (citations omitted).   The causal connection can also be present due to "1) [the

10  supervisors'] own culpable action or inaction in the training, supervision, or control of

11  subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is

12  made; or 3) [their] conduct that showed a reckless or callous indifference to the rights of others."

13  Lemire, 726 F.3d at 1075 (quoting Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir.2000)).

14          **b.      Municipal Liability Legal Standard**

15          A local government unit may not be held responsible for the acts of its employees under a

16  respondeat superior theory of liability.   Monell v. Department of Social Services, 436 U.S. 658,

17  691 (1978).   Rather, a local government unit may only be held liable if it inflicts the injury

18  complained of through a policy or custom.   Waggy v. Spokane County Washington, 594 F.3d

19  707, 713 (9th Cir. 2010).   Generally, to establish municipal liability, the plaintiff must show that

20  a constitutional right was violated, the municipality had a policy, that policy was deliberately

21  indifferent to plaintiff's constitutional rights, "and the policy was the moving force behind the

22  constitutional violation."   Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009)

23  (citation omitted); see also Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir.

24  2002).

25          **c.      Application to Defendants Whiteside and City of Selma**

26          In this instance, Plaintiff has presented no evidence to create a genuine issue of material

27  fact that his constitutional rights were violated.   Since Plaintiff has failed to establish this

28  element of his claims against Defendants City and Whiteside they are entitled to summary

judgment.

Further, while the first amended complaint alleges that Defendants City and Whiteside were aware of repeated acts of misconduct, abuse of authority, and disregard for the rights of citizens by Defendant Burgamy and other officers, and failed to train officers, supervise or discipline officers, Plaintiff has presented no evidence to support the allegations. Accordingly, Plaintiff has failed to meet his burden to show that a genuine issue of material fact exists that a custom or policy existed or that there was a lack of training. Defendants City and Whiteside's motion for summary adjudication is granted.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Defendants' motion for summary judgment and supplemental motion for summary judgment are GRANTED;

2.     Judgment is entered against Plaintiff and in favor of Defendants Burgamy, City of Selma, and Whiteside; and

3.     The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:   **April 15, 2015**

UNITED STATES MAGISTRATE JUDGE